## Case No. 12,188.

### RYAN v. YOUNG et al.

[9 Biss. 63; 8 Reporter, 229; 11 Chi. Leg. News, 353; 20 Alb. Law J. 79.] [2]

Circuit Court, N. D. Illinois. July, 1879.

REMOVAL OF CAUSES—REAL PARTIES IN INTEREST—REMAND.

Where a suit, commenced in a state court, is removed to the United States circuit court, and it appears to the satisfaction of said circuit court that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the circuit court, it is the duty of the court to dismiss or remand the cause. So where it appears that the real substantial controversy in the suit, is between citizens of the same state, and that the non-resident party upon whose petition the cause was removed has parted with his interest, the federal court will remand the cause to the state court.

[This was a bill in equity by Martin Ryan against James Young and others.]

R. H. Forrester, for complainant.

George H. Leonard and Samuel Ashton, for defendants, citing Dillon, Rem. Causes,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 8 Reporter, 229, and 20 Alb. Law J. 79, contain only partial reports.]

19, 28, 77. That the act of March 3, 1875 [18 Stat. 470], did not repeal the second and third subdivisions of section 639 of the Revised Statutes of the United States: New Jersey Zinc Co. v. Trotter [Case No. 10,167]; Cooke v. Ford [Id. 3,173].

HARLAN, Circuit Justice. This suit was commenced in the circuit court of Cook county, and upon the petition of the defendant, Young, a citizen of Iowa, it was removed to this court for hearing. The complainant, Ryan, and the defendant, Boyd, are both citizens of Illinois, while the defendant insurance company is a corporation created by the laws of Connecticut.

Upon looking into the pleadings and depositions, I find the following facts satisfactorily proven.

1. Lee and wife being indebted to the insurance company in the sum of $3,500, evidenced by Lee's bond for that amount, due January 28, 1872, with interest at 8 per cent., payable semi-annually, executed upon that day to the company, a mortgage upon a house and lot in Chicago, to secure such debt. The mortgage contained numerous conditions and agreements, one of which authorized the mortgagee, its successors or assigns, either in person, or by attorney, to sell and dispose of the mortgaged premises, and all benefit and equity of redemption of the mortgagors, their heirs or assigns, at public auction, in Chicago, after 30 days notice of the time and place of sale, by advertisement in some one of the daily newspapers published in that city. The mortgage dispensed with personal notice to the mortgagors of such sale.

2. Boyd having in some way acquired the interest of Lee in the premises, subject necessarily to the prior claim of the insurance company, in the year 1876, conveyed the same to the complainant, Ryan, for the consideration of $5,500. of which sum Ryan paid him $3,500 in cash, and agreed to convey to Boyd, at the price of $2,000, a lot owned by him in Riverside, the title to which was thereafter to be perfected. At the date of Ryan's purchase, the balance due the insurance company on its mortgage debt was about $2,000. He took the property subject to, and under an agreement to pay, that balance on the Lee debt. The interest due the company was paid by Ryan up to July, 1877, including the installment due in that month. He had made these payments of interest after notice from the company.

3. Ryan swears, and the evidence sustains his statement, that he did not receive notice from the company in reference to the installments of interest due on January, 1878, and July, 1878, and that he had accidentally overlooked them.

4. At the time of Ryan's purchase from Boyd, he gave the latter his note for $2,000, secured by deed of trust to Haines, upon the same property covered by the mortgage to the insurance company. It is admitted that his object in so doing was to secure the performance of his agreement to perfect the title to, and the conveyance to Boyd of, the Riverside lot, which being done, the note for $2,000 and the Haines deed of trust were to be surrendered and cancelled. Prior to July, 1878, Ryan had perfected his title to the Riverside lot, and executed his conveyance therefor, of all which Boyd had due notice; and though, perhaps, he had not, before that date, personally and formally accepted that conveyance as a compliance with Ryan's agreement, it was his duty to have done so. In any event, prior to July, 1878, Ryan was entitled to have the $2,000 note, and the trust deed given to secure it surrendered and cancelled.

5. In July, 1878, or about that time, Boyd made application to the insurance company, through its Chicago agents, to purchase its debt and the mortgage held by it upon the premises in question—the same mortgaged by Lee and wife, and sold by Boyd to Ryan—representing or inducing the company's agents to believe that he owned a second mortgage (the Haines trust deed) upon the property.

It was contrary to the usages of the company to sell their mortgage debts to any except holders of subordinate mortgages. Their rule was to secure foreclosures by judicial proceedings. But believing Boyd to be the owner of the subordinate mortgage, the company sold and assigned to him "without recourse" its debt secured by the Lee mortgage—the assignment, at Boyd's instance, being made in blank.

6. As soon as this assignment was procured, Boyd caused an advertisement of the premises for sale at public auction, under the terms of the Lee mortgage, the sale to take place in August, 1878. The advertisement was made in the name of the insurance company, but without its direction or procurement. The sale occurred at the time advertised, and was conducted by Boyd's attorney, in the name of the company. The property was struck off to some one whose name is not disclosed, and who was unknown to the crier, but who represented himself as bidding for James Young, who was not himself present, and who was also unknown to the crier. The amount bid was the balance due on the Lee bond, of which Boyd was the owner. Boyd then caused the insurance company to convey the property to Young, and shortly thereafter, by quit-claim deed, dated August 17, 1878, Young conveyed to Boyd. The former, so far as the record shows, neither paid nor received anything upon his purchase, and received nothing upon his conveyance to Boyd. Of the advertisement and sale, Ryan had no notice until after the sale occurred.

It is not to be doubted, under the evidence, that throughout the whole transaction, Young was the mere agent and representative of

Boyd, and had no real interest in the property.

Ryan claims that all the proceedings through which Boyd acquired title were fraudulent and void. He seeks to redeem the property, and to that end, asks that an account be taken of the amount due upon the original mortgage debt to the insurance company. Upon that amount being ascertained, he asks that he be allowed to pay the same; that the conveyance under which Boyd claims be set aside; that his title to the property be confirmed and quieted, and for all other proper relief. Upon these facts, it is evident that there is no real, substantial controversy in this case between Ryan and Young, or between Ryan and the insurance company.

It is practically of no concern to Young or the insurance company what decree is entered as between Ryan and Boyd. Young passed the legal title to Boyd by a quit-claim deed, and the insurance company assigned its mortgage debt without recourse. Neither Young nor the insurance company is an indispensable party to the relief asked. The vital question in the case is, whether Ryan can enforce his claim to redeem the land as against Boyd, the holder of the legal title, upon paying the amount due on the Lee mortgage debt at the time of its transfer by assignment in blank, to Boyd. The only real, substantial controversy in the case is between Ryan and Boyd, both of whom are citizens of Illinois. Of such a controversy this court cannot take cognizance. The case comes within section 5 of the act of March 3, 1875, entitled "An act to determine the jurisdiction of circuit courts of the United States, and to regulate the removal of causes from state courts, and for other purposes." That section declares "that if in any suit commenced in a circuit court, or removed from a state court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require," etc. My duty, obviously, is to proceed no further in this cause but to remand it to the state court for final hearing.

It is proper to state that upon the face of the original bill there was apparently a controversy in the suit between Ryan and Young, which, perhaps, entitled the latter to claim a removal. But before Young presented his petition for removal, indeed, before the commencement of this suit, he had executed, and there was upon record, a quit-claim deed

from him to Boyd. That fact was not, however, disclosed by his petition. Had it been disclosed, the state court would have seen that there was no substantial controversy between Young and Ryan, and that the real issue was between Ryan and Boyd. Now, that it appears upon the whole case that the real substantial controversy in the suit is between citizens of Illinois, and that there is no such controversy between citizens of different states, our duty is to send the cause back to the state court for a determination of the issues between the real parties in interest.

The court expresses no opinion as to what are the rights of the parties upon the merits. Complainant's counsel may draw the necessary order, giving his client costs incurred in this court.